No. 33,952

In re Application of ED FENSKE for Writ of Habeas Corpus.

(79 P. 2d 829)

Opinion filed June 11, 1938.

*M. A. Bender,* of Holton, for the petitioner.

*Clarence V. Beck,* attorney general, *Leland M. Quantius,* special assistant attorney general, and *Warden L. Noe,* county attorney, for the respondent.

The opinion of the court was delivered by

HARVEY, J.: This is an original proceeding in habeas corpus. In March, 1936, a complaint was filed before C. F. Hurrel, a justice of the peace of Holton, charging that Ed Fenske, the petitioner in this proceeding, had threatened to kill his neighbors, G. M. Bone and family, and it was believed he would execute such threat. A warrant was issued, Fenske was brought into court, and a hearing was had, at which several witnesses testified, and the justice of the peace found there was reason to fear the commission of the offense men-

tioned in the complaint, and required the defendant to enter into a recognizance in the sum of $3,500, conditioned as required by G. S. 1935, 62-203. Fenske did not give the bond and he was duly committed to jail. The justice promptly filed with the clerk of the district court a transcript of the proceedings. In August, 1936, it appears an unsuccessful attempt was made to have Fenske adjudged insane by appropriate proceedings in the probate court. A transcript of the testimony of that hearing has been furnished us. In September, 1936, Fenske, through his attorney, moved to have the amount of his bond reduced. A hearing was had on that motion, and a transcript of this testimony has been furnished. The motion was denied, defendant was ordered to give a recognizance in the sum of $3,500, and in default thereof to be committed to jail. He did not give the bond and was held in jail. In March, 1937, he filed a petition for a writ of habeas corpus in the district court. A hearing was had on this petition, and a transcript of the testimony has been furnished us. The writ was denied and defendant was again committed to jail in default of bond. In May, 1937, upon his motion, the court reduced the amount of the bond to $2,500. The bond has never been given. The petitioner is still being held in jail on the commitment issued by the justice of the peace May 12, 1936, for his failure to give the peace bond required at that time, or to give the bond in the amount as reduced by the district court.

It is not contended by petitioner here that the evidence was insufficient to justify the orders made in the justice court, or in the district court. Neither is it contended that he was unable to give the bond. Respondent represents, and in effect it is conceded by the petitioner, that he at all times has been financially able to give a bond in either of the sums required.

Petitioner's sole point here is that since the district court could not require him to give a bond in this proceeding for a term longer than one year (G. S. 1935, 62-210), and it has been more than a year since the district court made any requirement for him to give bond, which, had it been given would have expired by its terms, that as a matter of law he cannot be held in jail for a longer time, when in fact he had not given the bond. We are inclined to concur in this view.

It must be remembered that so far as the matter before us is concerned, the petitioner has not been convicted of any crime. Indeed, he has not been charged with the commission of any crime. To the extent his confinement in jail is authorized, it is by virtue of G. S.

1935, art. 2, ch. 62. These sections are designed to prevent the commission of threatened offenses, insofar as that reasonably can be done. Briefly stated, these statutes provide that when a verified complaint that a named person has threatened to commit an offense against the person or property of another is filed the magistrate may issue a warrant and have such person brought before him, examine all witnesses produced by either party, and if the magistrate finds there is reason to fear the commission of the offense by the person charged he shall require such person to enter into a recognizance, with surety, to appear before the district court on the first day of the next term, and in the meantime to keep the peace toward the people of this state, and particularly toward the complainant. It will be observed that this procedure, if fully carried out, and the recognizance given, would not be complete insurance that the one charged would not commit the offense feared. He might commit the offense in this state while at liberty on the recognizance. If so, he and his sureties would be liable on the recognizance and he would be liable criminally, as though that had not been given. (See 9 C. J. 393; 8 R. C. L. 282; 8 Am. Jur. 842; Anno. 54 A. L. R. 388, and 93 A. L. R. 304.) Or, he might commit the offense outside this state without him or his sureties being liable on the recognizance. (*State v. Stanley*, 104 Kan. 475, 179 Pac. 361.)

The statute apparently contemplates that the recognizance required by the magistrate will be given, but provides (G. S. 1935, 62-204) that if he fail or refuse to find surety, the magistrate shall commit him to prison "until he finds same." Obviously, the drafters of these provisions thought of this as a temporary commitment until surety could be found, rather than a commitment for life if the one charged was unable or refused to find surety. The next section requires the recognizance to be transmitted to the clerk of the district court. There is no specific direction in the statute for the magistrate to transmit anything to the district court but the recognizance, or to transmit anything to the district court if the recognizance is not given. In view of the fact the parties may appear before the district court (G. S. 1935, 62-210), irrespective of whether a recognizance was given (and irrespective of whether a complaint had been filed), it was proper for the magistrate before whom the complaint had been made to make and file with the clerk of the district court a transcript of the proceedings before him, as was done in this case, even though the person charged failed or refused to give the recognizance and to find surety. G. S. 1935, 62-208, provides

that any person who shall have entered into such a recognizance shall appear before the district court at the next term, again assuming the recognizance will be given. The only section of the statute which appears specifically to authorize a hearing before the district court in a proceeding of this kind, when the recognizance has not been given, is G. S. 1935, 62-210. This directs the court to examine the evidence, and either to discharge the recognizance taken, or require a new one, as the circumstances may require, "for such time as shall appear necessary, not exceeding one year."

Now, the record furnished us shows three hearings before the district court. The last of these was in May, 1937. Perhaps technically they were not held under this section of the statute, but the record of these hearings as presented to us shows that evidence was taken at each of them, and collectively there was a full hearing and inquiry into the entire controversy, at which witnesses were called and testified. This evidence on the one side disclosed threats made by the petitioner here against Mr. Bone and his family, and to a certain extent against others prior to the hearing before the magistrate in March, 1936. No threats of that character were shown to have been made since that time. Testifying in his own behalf, the petitioner denied having made some of those threats, and as to others he testified if he made them he did not mean them. At the last hearing in district court the petitioner was required to enter into a recognizance to keep the peace in the sum of $2,500, and upon his failure and refusal to do so to be committed to jail. This was May 4, 1937. The order of the court on this hearing was not in fact written up or signed by the judge of the district court until after this proceeding was brought in this court. No copy of that order, or any commitment based thereon, was ever given to the sheriff. His return shows, as his authority to hold defendant, the commitment issued by the magistrate in March, 1936. Perhaps these facts just stated are not of particular importance at this time. The important thing is that the recognizance required by the court on May 4, 1937, if given, would have expired by the terms of the statute (G. S. 1935, 62-210) in one year. That time has expired. The result is, he has remained in jail. By this conduct the assurance that he would keep the peace toward the state, and particularly toward Mr. Bone and his family, has been greater than if he had given the recognizance; hence, it cannot be said that the petitioner has not given to the state and to the individual as great an assurance that he would keep the peace as if he had given the recognizance.

We feel confident the statute never was designed to keep one in jail indefinitely who was unable or refused to give the recognizance contemplated in the statute, although the efforts of diligent counsel and our own research have disclosed no case directly in point. As previously noted, the statute was designed as a preventive measure. The petitioner has not been charged·or convicted of a crime. If anything he did prior to March 12, 1936,·disclosed by the testimony either before the magistrate or in the district court, constituted a criminal offense, the prosecution of such an offense has become barred by the statute of limitations. (G. S. 1935, 62-503.)

For the reasons stated, we think the petitioner is entitled to his discharge from custody. On behalf of respondent, fear is expressed that if given his liberty the petitioner will carry out the threats made more than two years ago. Of course, if he does, he will be liable to criminal prosecution, just as he would have been had he given the recognizance and then carried out the threats. If upon his discharge from custody he makes new threats of a similar character, perhaps the preventive measures provided by G. S. 1935, art. 2, ch. 62, may again be invoked, but since that point is not before us, obviously it cannot be determined.

The writ prayed for is allowed.

SMITH, J. (dissenting): I dissent. Briefly, my idea is that the statutory provision that the bond could not be required for more than a year does not mean that the defendant could not be held more than a year where he refused to give bond. I think there is a marked difference in the two situations. Here is the way I look at it: If the defendant was unable to give bond and was held a year that would be one thing. If he did give bond, as required by the statute, that would be another thing. Obviously it would be difficult to obtain sureties on a bond to keep the peace where the bond was to run indefinitely. Where a man is able to give a bond and refuses to do so that is another situation. The fact that he is able to give bond and refuses to do so is some evidence to me that he is still in a frame of mind which makes it dangerous for him to be at large. I dislike to be responsible for turning a man in that frame of mind out into society. As noted in the opinion, there are no cases bearing on this. It is an original proceeding and this court should exercise some discretion in view of the entire record. This man has not been kept in jail. He has kept himself in jail.